UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| BCBSM, Inc., Health Care Service Corporation, Molina Healthcare, Inc., and Blue Cross and Blue Shield of Florida, Inc.,<br><br>　　　　　Plaintiffs,<br><br>v.<br><br>Celgene Corporation and Bristol-Meyers Squibb Corporation,<br><br>　　　　　Defendants. | Case No. 20-cv-02071 (SRN/ECW)<br><br>**ORDER** |

Charles Z. Kopel, Lowey Dannenberg, P.C., 100 Front Street, Suite 520, West Conshohocken, PA 19428; Peter D. St. Phillip, Jr. and Uriel Rabinovitz, Lowey Dannenberg, P.C., 44 South Broadway, Suite 1100, White Plains, NY 10601; and Thomas R. Bennerotte and Vincent J. Moccio, Bennerotte & Associates, P.A., 3085 Justice Way, Suite 200, Eagan, MN 55121, for Plaintiffs.

Andrew M. Luger and Lisa L. Beane, Jones Day, 90 South Seventh Street, Suite 4950, Minneapolis, MN 55402; Benjamin M. Greenblum, Colette Connor, and John E. Schmidtlein, Williams & Connolly LLP, 725 Twelfth Street, Washington, DC 20005; Brian David Hershman, Jones Day, 555 South Flower Street, 50th Floor, Los Angeles, CA 90071; and Rajeev Muttreja and Toni Citera, Jones Day, 250 Vesey Street, New York, NY 10281, for Defendants.

SUSAN RICHARD NELSON, United States District Judge

　　　This matter is before the Court on three motions filed by the parties. First, Plaintiffs move to remand this case to the District Court for Dakota County, Minnesota [Doc. No. 24]. Second, Defendants move to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), or in the alternative, to transfer this case to the

1

United States District Court for the District of New Jersey [Doc. No. 39]. And finally, Defendants move to dismiss for failure to state a claim upon which relief may be granted under Rule 12(b)(6) [Doc. No. 45]. Based on a review of the files, submissions, and proceedings herein, and for the reasons below, the Court **DENIES** Plaintiffs' Motion to Remand, **GRANTS** Defendants' Motion to Dismiss or Transfer Venue, and **DENIES as moot** Defendants' Motion to Dismiss under Rule 12(b)(6).

**I.    BACKGROUND**

In this case, Plaintiffs charge Defendant Celgene Corporation and its parent company, the Bristol-Meyers Squibb Company (collectively, "Celgene"), with suppressing generic competition against Celgene's Thalomid and Revlimid drugs in violation of state antitrust laws. (Compl. [Doc. No. 1-1], at ¶¶ 4-6.) Specifically, Plaintiffs allege that Celgene: (1) manipulated its Risk Evaluation and Mitigation Strategy ("REMS") programs, which are designed to control distribution of the drugs and protect patients from the drugs' harmful properties, in order to prevent potential generic competitors from obtaining the samples of the drugs necessary to develop generics; (2) prevented pharmacies and ingredient suppliers from supplying such samples to potential generic competitors; (3) filed baseless citizen petitions with the United States Food and Drug Administration to prevent approval of generic versions of Thalomid and Revlimid; (4) fraudulently obtained patents from the United States Patent and Trademark Office; and (5) engaged in serial "sham" patent infringement lawsuits.[1] (*Id.* ¶ 4.) Plaintiffs also allege that when Celgene's efforts

---

[1] One plaintiff, the Health Care Service Corporation, also asserts fraud, negligent misrepresentation, and unjust enrichment claims regarding Celgene's alleged promotion of

failed to prevent potential generic competition, Celgene "entered into confidential settlements with its competitors that may have included anti-competitive 'pay-for-delay' reverse payments." (*Id.* ¶ 5.) As a result of these efforts, Celgene allegedly maintained a monopoly over Thalomid and Revlimid, enabling it to charge inflated prices that resulted in Revlimid becoming the second highest grossing drug worldwide. (*Id.* ¶¶ 11-13.)

Plaintiffs are BCBSM, Inc., the Health Care Service Corporation ("HCSC"), Molina Healthcare, Inc. ("Molina"), and Blue Cross and Blue Shield of Florida, Inc. ("Florida Blue")—insurers who allege that they were required to pay "supracompetitive prices" to reimburse members for Thalomid and Revlimid. (*Id.* ¶¶ 13, 21-24.) Plaintiffs originally filed their Complaint in the District Court for Dakota County, Minnesota, asserting several causes of action under numerous states' antitrust and tort laws. (*See id.* ¶¶ 545-92.)

After Celgene removed to this Court, Plaintiffs moved to remand, arguing that this Court lacks subject-matter jurisdiction. Celgene, in turn, moved to dismiss Plaintiffs' claims for lack of personal jurisdiction or, in the alternative, to transfer the case to the United States District Court for the District of New Jersey. In addition, Celgene moved to dismiss for failure to state a claim upon which relief may be granted under Federal Rule of Civil Procedure 12(b)(6).

Against this backdrop, the Court will turn to the record pertinent to the parties' motions. The Court will first examine Plaintiffs' allegations regarding personal jurisdiction

---

Thalomid and Revlimid for off-label uses, for which Thalomid and Revlimid were known to be ineffective. (*See id.* ¶¶ 575-92.)

over Celgene, which are relevant to both Plaintiffs' Motion to Remand and Celgene's Motion to Dismiss or Transfer Venue. Then, the Court will briefly overview the lengthy history of litigation underlying this lawsuit, which is eminently relevant to Celgene's request to transfer this case to the District of New Jersey. Given the Court's ultimate disposition of this matter, it need not examine Plaintiffs' allegations regarding the merits of their claims.

### A. The Parties' Connections to Minnesota

Both Plaintiffs' Motion to Remand and Celgene's Motion to Dismiss or Transfer Venue turn on the connection between the parties, their claims, and Minnesota. As alleged in the Complaint, BCBSM is both headquartered and incorporated in Minnesota; HCSC is headquartered and incorporated in Illinois; Florida Blue is headquartered and incorporated in Florida; and Molina is headquartered in California and incorporated in Delaware. (*Id.* ¶¶ 21-24.) Celgene is headquartered in New Jersey and incorporated in Delaware, and Bristol-Meyers Squibb is headquartered in New York and incorporated in Delaware. (*Id.* ¶¶ 26-27.)

The alleged connection between the parties and this forum arises principally from Prime Therapeutics LLC and Prime Therapeutics Specialty Pharmacy LLC (collectively, "Prime Therapeutics"). Prime Therapeutics are pharmacy benefit managers, are incorporated and headquartered in Minnesota, and are partially owned by HCSC. (*Id.* ¶ 20.) It is alleged that HCSC, BCBSM, and Florida Blue reimbursed claims for Thalomid and Revlimid through Prime Therapeutics, including claims in Dakota County, Minnesota. (*Id.* ¶ 469.) Plaintiffs specifically allege that HCSC spent $57,000 on Thalomid and $675,000

on Revlimid for members in Dakota County. (*Id.* ¶ 20.) However, Plaintiffs do not allege that Molina had any relationship with Prime Therapeutics, or that Molina reimbursed claims for Thalomid and Revlimid in Minnesota.

Further, Plaintiffs allege that Minnesota pharmacies participated in Celgene's REMS programs—which are designed to control distribution of Thalomid and Revlimid, given the drugs' history of dangerous side-effects. (*See id.* ¶¶ 103-12.) Plaintiffs allege that Celgene abused its REMS programs to prevent distribution of Thalomid and Revlimid to potential competitors. (*Id.*) Although the Complaint alleges generally that Celgene operated its REMS programs through specialty pharmacies, Plaintiffs do not specifically identify any Minnesota pharmacies that participated in the programs, or any Minnesota manufacturers that were harmed by the programs. (*See id.* ¶¶ 103-06.)

Finally, Plaintiffs argue—though the Complaint does not allege—that Minnesota is a "crucial hub" for the sale of pharmaceuticals, and that Celgene employs sales representatives to interact with physicians and other healthcare professionals in the state. (Mem. in Opp'n to Mot. to Dismiss or Transfer [Doc. No. 54], at 15.)

### B. Litigation Involving Thalomid and Revlimid

Plaintiffs are not the first to allege that Celgene has engaged in anticompetitive practices with respect to Thalomid and Revlimid. In 2014, generic manufacturer Mylan brought an antitrust suit against Celgene in the District of New Jersey. After protracted litigation culminating in a lengthy and detailed summary judgment order, the case settled in 2019. *See Mylan Pharm., Inc. v. Celgene Corp.*, No. 14-cv-02094-ES-MAH (D.N.J. Oct. 3, 2018). In addition, a putative class of indirect purchasers brought similar antitrust claims

against Celgene in 2014, also in the District of New Jersey. *See In re Thalomid & Revlimid Antitrust Litig.*, No. 14-cv-06997-MCA-MAH (D.N.J.). Plaintiffs are among a number of potential class-members that opted out of the class settlement in that case. Another class opt-out filed suit in the District of New Jersey in 2019, and that litigation remains ongoing. *See Humana Inc. v. Celgene Corp.*, No. 19-cv-07532-ES-MAH (D.N.J.). An additional opt-out suit was filed in the District of Minnesota alleging "strikingly similar" claims as the *Humana* plaintiffs; this Court subsequently transferred the case to the District of New Jersey. *United HealthCare Servs., Inc. v. Celgene Corp.*, No. CV 20-686 (DSD/ECW), 2020 WL 7074626, at *2 (D. Minn. Dec. 3, 2020). Another similar lawsuit was filed in the District of Columbia, and Celgene's motion to transfer that case to the District of New Jersey is under advisement. *Blue Cross & Blue Shield Ass'n v. Celgene Corp.*, No. 20-cv-01980-TSC (D.D.C.). Plaintiffs concede that the antitrust claims raised in *Humana*, *United HealthCare Services*, and *Blue Cross* are similar to those alleged here. (Mem. in Opp'n to Mot. to Dismiss or Transfer at 6-7.)[2]

In addition to the lawsuits directly related to Celgene's alleged antitrust activity, Celgene has engaged in extensive patent litigation in the District of New Jersey. (*See* Mem. in Supp. of Mot. to Dismiss or Transfer [Doc. No. 41], at 12-13 (collecting citations to ten

---

[2] An additional case has been commenced in Pennsylvania state court. *See Blue Cross and Blue Shield of Vermont v. Celgene Corp.*, No. 200500496 (Ct. C.P. Phil. Cty.). The parties have not submitted a copy of the complaint in that matter to this Court. At oral argument, counsel for Celgene represented that Celgene intends to seek transfer of that case to the District of New Jersey. (Tr. [Doc. No. 62], at 29, 54.)

lawsuits).) These lawsuits form the basis for Plaintiffs' claim that Celgene stifled generic competition through "sham" patent infringement suits. (*See* Compl. ¶¶ 338-441.)

## II. DISCUSSION

### A. Jurisdiction

The Court turns first, as it must, to its jurisdiction over this matter. Plaintiffs argue that this Court lacks subject-matter jurisdiction, and that therefore Celgene's removal was improper. Under 28 U.S.C. § 1441(a), this Court has removal jurisdiction if it would have had original jurisdiction over the action had Plaintiffs filed their Complaint in this Court— that is, if either diversity or federal-question jurisdiction exists. If the Court lacks subject-matter jurisdiction, the case must be remanded. *Id.* § 1447(c). As the removing party, Celgene bears the burden of establishing federal jurisdiction by a preponderance of the evidence. *Altimore v. Mount Mercy Coll.*, 420 F.3d 763, 768 (8th Cir. 2005).

Celgene contends that both diversity and federal-question jurisdiction exist, despite the fact that Plaintiff Molina shares its Delaware citizenship with Celgene, and the fact that the Complaint states only state law causes of action. Celgene urges this Court to disregard Molina's citizenship for a number of reasons, including that the assignments to Molina of its subsidiaries' claims against Celgene are invalid, that Molina was fraudulently misjoined, and that the Court lacks personal jurisdiction over Celgene with respect to Molina's claims. With respect to federal-question jurisdiction, Celgene argues that Plaintiffs' state law claims in fact arise under federal law pursuant to *Gunn v. Minton*, 568 U.S. 251 (2013). In opposing Celgene's motion, Plaintiffs dispute the foregoing contentions, and argue that

the Court *must* determine whether it has subject-matter jurisdiction before considering its personal jurisdiction over Celgene.

It is axiomatic that a federal court "must satisfy itself of its jurisdiction over the subject matter before it considers the merits of a case." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999). It is not true, however, that a court must always consider questions of subject-matter jurisdiction before considering issues of personal jurisdiction. In *Ruhrgas*, the Supreme Court held that a federal district court, following removal of an action from state court, may "choose among threshold grounds for denying audience to [the] case on the merits." *Id.* at 584–85. The Court reasoned that although "subject-matter jurisdiction necessarily precedes a ruling on the merits, the same principle does not dictate a sequencing of jurisdictional issues." *Id.* at 584.

To be sure, "in most instances subject-matter jurisdiction will involve no arduous inquiry," and in such cases, "both expedition and sensitivity to state courts' coequal stature should impel the federal court to dispose of that issue first." *Id.* at 587–88. But where a district court faces "a straightforward personal jurisdiction issue presenting no complex question of state law," and a subject-matter jurisdiction issue that "raises a difficult and novel question," the court has discretion to resolve the matter on personal jurisdiction grounds first. *Id.* at 588; *accord In re AFY*, 734 F.3d 810, 816 (8th Cir. 2013) ("A court faced with more than one jurisdictional issue may decide these jurisdictional questions in any order."); *Crawford v. F. Hoffman-La Roche Ltd.*, 267 F.3d 760, 764 (8th Cir. 2001) ("[C]ertain threshold issues, such as personal jurisdiction, may be taken up without a

finding of subject-matter jurisdiction, provided that the threshold issue is simple when compared with the issue of subject-matter jurisdiction." (citing *Ruhrgas*, 526 U.S. at 588)).

In this case, the parties' arguments regarding this Court's subject-matter jurisdiction are difficult and complex. Celgene urges the Court to consider whether the assignments of Molina's subsidiaries' claims to Molina are invalid, and to adopt a "fraudulent misjoinder" doctrine—which the Eighth Circuit has declined to endorse[3]—and find that Molina's claims are so distinct from those of the other Plaintiffs that Molina's citizenship should not be considered for diversity purposes. Celgene further urges the Court to find that Plaintiffs' 142-page Complaint, containing causes of action under dozens of states' statutory and common law, in truth states a claim arising under federal law.

By contrast, the personal jurisdiction issues raised in Celgene's Motion to Dismiss are comparatively "straightforward," and present "no complex question of state law" (or federal law, for that matter)—at least with respect to Molina's claims. *Ruhrgas*, 526 U.S. at 588; *see Addelson v. Sanofi*, No. 4:16-cv-01277 ERW, 2016 WL 6216124, at *2 (E.D. Mo. Oct. 25, 2016) (finding that subject-matter jurisdiction was the "more complicated" inquiry, given the defendant's invocation of the fraudulent misjoinder doctrine).

---

[3] *See In re Prempro Prod. Liab. Litig.*, 591 F.3d 613, 622 (8th Cir. 2010) ("We make no judgment on the propriety of the [fraudulent misjoinder] doctrine in this case, and decline to either adopt or reject it at this time. Rather, on the record in this case, we conclude that even if we adopted the doctrine, the plaintiffs' alleged misjoinder in this case is not so egregious as to constitute fraudulent misjoinder.").

Accordingly, the Court exercises its discretion under *Ruhrgas* to first consider its personal jurisdiction over Celgene with respect to Molina's claims.[4]

### 1.     **Personal Jurisdiction**

At the pleading stage, a plaintiff need only make a prima facie showing that the court's exercise of jurisdiction is proper. *Fastpath, Inc. v. Arbela Techs. Corp.*, 760 F.3d 816, 820 (8th Cir. 2014). The plaintiff may meet this burden by pleading facts sufficient to "support a reasonable inference that the defendant[] can be subjected to jurisdiction within the [forum] state." *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072 (8th Cir. 2004) (citation omitted). Where, as here, the Court has not held an evidentiary hearing on the motion, the Court "must view the evidence in a light most favorable to the plaintiff and resolve factual conflicts in the plaintiff's favor." *Fastpath, Inc.*, 760 F.3d at 820.

"A federal court may assume jurisdiction over a defendant in a diversity action if the forum State's long-arm statute permits the exercise of personal jurisdiction and that exercise is consistent with the Due Process Clause of the Fourteenth Amendment." *Creative Calling Sols., Inc. v. LF Beauty Ltd.*, 799 F.3d 975, 979 (8th Cir. 2015) (citation

---

[4] Several district courts within the Eighth Circuit have taken the same course by considering personal jurisdiction over a non-diverse plaintiff's claims prior to ruling on subject-matter jurisdiction. *See, e.g.*, *Siegfried v. Boehringer Ingelheim Pharm., Inc.*, No. 4:16-CV-1942 (CDP), 2017 WL 2778107 (E.D. Mo. June 27, 2017) (finding that the court lacked personal jurisdiction over non-diverse plaintiffs' claims, that after dismissing those claims complete diversity existed, and therefore denying motion to remand); *Jordan v. Bayer Corp.*, No. 4:17-CV-865 (CEJ), 2017 WL 3006993 (E.D. Mo. July 14, 2017) (same); *Addelson*, 2016 WL 6216124 (finding that the personal jurisdiction inquiry was the simpler threshold issue given the defendant's invocation of the fraudulent misjoinder doctrine, dismissing the non-diverse plaintiff's claims on personal jurisdiction grounds, and then denying motion to remand).

omitted). Minnesota's long-arm statute is co-extensive with federal due process requirements. *Juelich v. Yamazaki Mazak Optonics Corp.*, 682 N.W.2d 565, 570 (Minn. 2004). Accordingly, this Court has personal jurisdiction over Celgene so long as due process is satisfied.

Personal jurisdiction may be either specific or general. "'Specific jurisdiction refers to jurisdiction over causes of action arising from or related to a defendant's actions within the forum state,' while '[g]eneral jurisdiction . . . refers to the power of a state to adjudicate any cause of action involving a particular defendant, regardless of where the cause of action arose.'" *Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 593 (8th Cir. 2011) (quoting *Miller v. Nippon Carbon Co.*, 528 F.3d 1087, 1091 (8th Cir. 2008)). Plaintiffs do not contend that Celgene is subject to general personal jurisdiction in Minnesota; rather, Plaintiffs assert that Celgene has sufficient minimum contacts with Minnesota to support the exercise of specific personal jurisdiction.

Courts must consider five factors in analyzing whether due process permits the exercise of personal jurisdiction over a non-resident defendant: "(1) the nature and quality of the contacts with the forum state; (2) the quantity of the contacts with the forum state; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties." *In re Nat'l Hockey League Players' Concussion Inj. Litig.*, No. 15-cv-00472 (SRN/JSM), 2019 WL 5079980, at *3 (D. Minn. Oct. 10, 2019) (citing *Wells Dairy, Inc. v. Food Movers Int'l, Inc.*, 607 F.3d 515, 518 (8th Cir. 2010)). "The first three factors are closely related and are of primary importance, while the last two factors are secondary." *Pecoraro v. Sky Ranch*

11

*for Boys, Inc.*, 340 F.3d 558, 562 (8th Cir. 2003) (citation omitted). Moreover, specific personal jurisdiction requires that "the *suit* must aris[e] out of or relat[e] to the defendant's contacts with the *forum*. In other words, there must be an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cty.*, 137 S. Ct. 1773, 1780 (2017) (citations and internal quotation marks omitted).

Applying the foregoing principles, the Court finds that Plaintiffs have not made a prima facie showing that the court's exercise of jurisdiction over Celgene with respect to Molina's claims is proper. *Fastpath, Inc.*, 760 F.3d at 820; *see In re Nat'l Hockey League Players' Concussion Inj. Litig.*, 2019 WL 5079980, at *3 (reading *Bristol-Meyers Squibb* as requiring non-resident plaintiffs "to establish jurisdiction, on a plaintiff-by-plaintiff, claim-by-claim assessment, by demonstrating that the claims involve 'an activity or occurrence that takes place in the forum State'"). In order to support personal jurisdiction, Plaintiffs point to their expenses incurred in reimbursing purchases of Thalomid and Revlimid in Dakota County, Minnesota—primarily through Prime Therapeutics. But Plaintiffs do not allege that either Molina or its subsidiaries used Prime Therapeutics as a pharmacy benefit manager, or otherwise reimbursed purchases of Thalomid and Revlimid in Minnesota. Indeed, Plaintiffs allege no facts to connect Molina and Minnesota at all. Moreover, none of Celgene's alleged anticompetitive conduct—Celgene's abuse of its

REMS distribution programs,[5] its manipulation of Food and Drug Administration procedures, or its prosecution of fraudulent patents and sham patent litigation—occurred in Minnesota. Thus, as in *Bristol-Meyers Squibb*, Plaintiffs do not allege that Molina is a resident of the forum, that Molina suffered any harm in the forum, or that any of the conduct giving rise to Molina's claims occurred in the forum. *See Bristol-Myers Squibb Co.*, 137 S. Ct. at 1782.

Accordingly, the Court finds that it does not have personal jurisdiction over Celgene, at least with respect to Molina's claims.[6] The Court therefore grants Celgene's

---

[5] Although Plaintiffs assert that some Minnesota pharmacies participated in Celgene's restrictive distribution programs, the Complaint does not specifically identify any such pharmacies. Rather, Plaintiffs' REMS claim—like its other claims—simply alleges nationwide misconduct by Celgene, without specifically connecting that conduct to this forum.

[6] The Court acknowledges Plaintiffs' request for the opportunity to conduct jurisdictional discovery to further develop the record regarding Celgene's contacts with this forum. In particular, Plaintiffs note that discovery is required to investigate Celgene's employment of sales representatives in Minnesota and Celgene's implementation of its REMS programs through Minnesota pharmacies. But Plaintiffs have not pleaded facts supporting jurisdictional discovery. *See Viasystems, Inc.*, 646 F.3d at 598 ("[W]hen a plaintiff offers only speculation or conclusory assertions about contacts with a forum state, a court is within its discretion in denying jurisdictional discovery." (quoting *Dever*, 380 F.3d at 1074 n.1)); *Kedrowski v. Lycoming Engines*, No. CV 15-19 (DSD/LIB), 2015 WL 12780469, at *2 (D. Minn. Feb. 20, 2015) ("Typically, jurisdictional discovery will only be permitted where a plaintiff offers some sort of documentary evidence—rather than speculations or conclusory allegations—of a defendant's contacts with a forum state.").

Neither Plaintiffs' conclusory allegation that "[a]ll defendants transact business in Dakota County," Compl. ¶ 18, nor Plaintiffs' assertions regarding Celgene's sales and marketing activity (which are not included in the Complaint), support the need for jurisdictional discovery. And, ultimately, the information required to connect Molina's claims to this forum—the only portion of Celgene's Motion to Dismiss for Lack of

Motion to Dismiss for Lack of Personal Jurisdiction in part, dismisses Molina's claims under Federal Rule of Civil Procedure 12(b)(2), and proceeds to consider whether subject-matter jurisdiction exists.

### 2. Subject-Matter Jurisdiction

Having determined that this Court lacks personal jurisdiction over Celgene with respect to Molina's claims, the subject-matter jurisdiction inquiry is simple. Without Molina, complete diversity exists in this case, the amount in controversy exceeds $75,000, and diversity jurisdiction therefore exists under 28 U.S.C. § 1332(a). *Cf. Siegfried*, 2017 WL 2778107 (finding that the court lacked personal jurisdiction over non-diverse plaintiffs' claims, that after dismissing those claims complete diversity existed, and therefore denying motion to remand); *see also supra* note 4. Accordingly, the Court denies Plaintiffs' Motion to Remand.[7]

### B. Motion to Dismiss or Transfer Venue

This Court's subject-matter jurisdiction thus established, the Court next must consider whether it has personal jurisdiction over Celgene with respect to the non-Molina Plaintiffs' claims, or whether to transfer this case to the District of New Jersey. In the Court's view, transfer is the better course. "For the convenience of parties and witnesses,

---

Personal Jurisdiction that this Court need consider—is already within Plaintiffs' possession.

[7] Because the Court finds that it lacks personal jurisdiction over Celgene with respect to Molina's claims and therefore has diversity jurisdiction, it need not consider Celgene's alternative bases for discounting Molina's citizenship, or whether federal-question jurisdiction exists.

14

in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). Section 1404(a) analysis requires two inquiries: First, the Court must consider "whether the action might have been brought in the proposed transferee district. If so, the Court must [then] consider the convenience and interest of justice factors." *Valspar Corp. v. Kronos Worldwide, Inc.*, 50 F. Supp. 3d 1152, 1155 (D. Minn. 2014) (quoting *Austin v. Nestle USA, Inc.*, 677 F. Supp. 2d 1134, 1136 (D. Minn. 2009)). Here, apart from Plaintiffs' contention that federal subject-matter jurisdiction does not exist, the parties do not dispute that this action might have been brought in the District of New Jersey. Because the Court has found diversity jurisdiction in this case, it proceeds to the second inquiry.

In order to determine whether transfer is warranted under § 1404(a), courts consider three general factors: the convenience of the parties, the witnesses, and the interests of justice. *Terra Int'l, Inc. v. Mississippi Chem. Corp.*, 119 F.3d 688, 691 (8th Cir. 1997). Transfer analysis requires "a case-by-case evaluation of the particular circumstances at hand and a consideration of all relevant factors." *Id.*

The Court begins with the interests of justice, which is perhaps the most important factor. *Nelson v. Master Lease Corp.*, 759 F. Supp. 1397, 1402 (D. Minn. 1991) (collecting citations). In analyzing this factor, the Court considers "(1) judicial economy, (2) the plaintiff's choice of forum, (3) the comparative costs to the parties of litigating in each forum, (4) each party's ability to enforce a judgment, (5) obstacles to a fair trial, (6) conflict of law issues, and (7) the advantages of having a local court determine questions of local

15

law." *Terra Int'l, Inc.*, 119 F.3d at 696. The Court considers all but the first and second factors to be neutral.[8]

The Court finds that the judicial economy factor weighs strongly in favor of transfer. The District of New Jersey has extensive experience with the antitrust claims levied against Celgene. The judges of that court have presided over many of the patent infringement lawsuits that form the basis for part of Plaintiffs' claims, have issued detailed rulings on the antitrust claims presented in the *Mylan* case, and presided over the class action from which Plaintiffs opted out. *See supra* Part I.B. Moreover, at least two similar antitrust cases from class opt-outs are currently pending in that district: the *Humana* case, and the *United HealthCare Services* case which this Court recently transferred due to its similarity to *Humana*.[9] Section 1404(a) was designed to prevent "the waste[] of time, energy and money" caused when "two cases involving precisely the same issues are simultaneously pending in different District Courts." *Cont'l Grain Co. v. The FBL-585*, 364 U.S. 19, 26 (1960). Transferring this case to the District of New Jersey, where the court is well-acquainted with the parties, their counsel, and the relevant legal and factual questions, will

---

[8] The parties have not argued that the costs of this litigation would be materially altered by transfer, or that transfer would affect Plaintiffs' ability to enforce a judgment, impose obstacles to a fair trial, or present conflict of law issues. And given that the Complaint includes causes of action under dozens of states' statutes, neither forum has particular advantages in applying the law.

[9] The Court acknowledges that Plaintiffs present one claim not present in the *Humana* and *United HealthCare Services* cases—namely, HCSC's claim involving Celgene's alleged off-label marketing of Thalomid and Revlimid. However, the presence of HCSC's off-label claim does not moot the significant judicial economy gains created by the transfer of Plaintiffs' antitrust claims.

prevent such waste. And, importantly, transferring this case to the forum where other class opt-out cases are pending will help prevent inconsistent judgements.[10] For these reasons, the Court finds that judicial economy concerns weigh strongly in favor of transfer.

The Court acknowledges that the District of New Jersey currently faces a far heavier caseload than this Court. *See In re Apple, Inc.*, 602 F.3d 909, 915 (8th Cir. 2010) ("Docket congestion is a permissible factor to consider in deciding a § 1404(a) motion, but it is not 'by itself, a dispositive factor.'" (citations omitted)); *see* Mem. in Opp'n to Mot. to Dismiss or Transfer at 22-23 (citing docket statistics showing that the District of New Jersey had 2,285 pending civil cases per district court judge, well above this District's caseload, as of June 2020). Nonetheless, the Court finds that the District of New Jersey's docket congestion does not override the judicial economy benefits offered by transfer.

Lastly, the Court considers Plaintiffs' choice of forum. As this Court reasoned in *United HealthCare Services*, Plaintiffs' "choice of forum is owed deference, but that deference does not override the considerations of judicial economy present in this case. . . . [A] plaintiff's choice of forum 'garners less weight where, as here, the claims alleged in

---

[10] Plaintiffs argue that many of the pending lawsuits against Celgene are before different judges in the District of New Jersey, and that some remain outside the District of New Jersey entirely, undercutting the judicial economy gains offered by transfer. However, that different judges within the District of New Jersey may currently be assigned to these cases does not negate the prospect that, once transferred, these cases may be consolidated before a single judge—a prospect that does not exist as readily for this case should the Court refuse transfer. Further, Celgene has moved to transfer at least one other class opt-out suit filed outside of the District of New Jersey—*Blue Cross & Blue Shield Ass'n v. Celgene Corp.*, No. 20-cv-01980-TSC (D.D.C.)—and that motion is currently under advisement.

17

the action' largely arose outside the forum state." 2020 WL 7074626, at *4 (citations omitted). Although the Court affords some deference to Plaintiffs' choice to file suit in Minnesota—where BCBSM resides—the fact that HCSC and Florida Blue do not reside in Minnesota, coupled with the fact that Celgene's alleged anticompetitive activity occurred almost entirely outside of Minnesota, mutes the significance of Plaintiffs' choice. Accordingly, the Court finds that the interests of justice weigh strongly in favor of transfer.

Next, the Court considers the convenience of the parties and witnesses. To be sure, Plaintiffs' choice to file suit in Minnesota indicates that this forum is more convenient for them than the District of New Jersey—and "[t]ransfer should not be granted if the effect is simply to shift the inconvenience to the party resisting the transfer." *Id.* (citing *Van Dusen v. Barrack*, 376 U.S. 612, 646 (1964)). But it appears that most of the material non-party witnesses[11] relevant to Celgene's alleged anticompetitive activity (including former employees that testified in prior lawsuits against Celgene) live in New Jersey. (*See* Decl. of Benjamin M. Greenblum [Doc. No. 25], at ¶ 2.) Although some of Plaintiffs' witnesses—including non-party witnesses from Prime Therapeutics—reside in Minnesota, the Court finds that this fact is insufficient to overcome the heavy weight the Court places on the interests of justice factor.

---

[11] *See Valspar Corp.*, 50 F. Supp. 3d at 1156 ("The focus is on non-party witnesses, since 'it is generally assumed that witnesses within the control of the party calling them, such as employees, will appear voluntarily in a foreign forum.'" (citation omitted)).

Accordingly, the Court grants Celgene's Motion to Transfer Venue to the United States District Court for the District of New Jersey.[12]

## III. CONCLUSION

Based on the submissions and the entire file and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiffs' Motion to Remand [Doc. No. 24] is **DENIED**;

2. Defendants' Motion to Dismiss or Transfer Venue [Doc. No. 39] is **GRANTED**, as follows:

    a. Plaintiff Molina Healthcare, Inc.'s claims against Defendants are **dismissed without prejudice**; and

    b. The clerk of court is directed to transfer the case to the United States District Court for the District of New Jersey; and

3. Defendants' Motion to Dismiss under Rule 12(b)(6) [Doc. No. 45] is **DENIED as moot**.

**IT IS SO ORDERED.**

Dated: March 22, 2021

s/Susan Richard Nelson
SUSAN RICHARD NELSON
United States District Judge

---

[12] The Court therefore need not consider whether the harm the non-Molina Plaintiffs allegedly suffered in Minnesota is sufficient to establish personal jurisdiction over Celgene. *See Fort Knox Music Inc. v. Baptiste*, 257 F.3d 108, 112 (2d Cir. 2001) ("The district court has th[e] power to transfer venue [under § 1404(a)] even if it lacks personal jurisdiction over the defendants." (citing *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466 (1962))).